UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TOMAS HERNANDEZ,

      Plaintiff,

      v.

COOK COUNTY, SUSAN SHEBEL, UMEADI
P. IMANLIHEN-IYARE, SHINY JAMES, and
BLESSING C. ONUORAH,

      Defendants.

No. 23 CV 301

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tomas Hernandez was a pretrial detainee within the Cook County Department of Corrections. While there, he submitted multiple grievances based on what he alleged was a lack of proper medical care. Defendants move for summary judgment on the issue of administrative exhaustion under the Prison Litigation Reform Act. For the reasons discussed below, the motion for summary judgment is denied.

## I.    Legal Standard

A motion for summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I view the facts and draw reasonable inferences in favor of the non-moving party to

determine whether summary judgment is appropriate. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023).

## II.    Background

Tomas Hernandez was a pretrial detainee who was incarcerated at the Cook County Department of Corrections from September 2022 to March 2024. [71] ¶¶ 1, 9–10.[1] Susan Shebel, Umeadi P. Imanlihen-Iyare, Shiny James, and Blessing C. Onuorah were Cook County employees at the time Hernandez was incarcerated. [71] ¶¶ 2–5.

In October 2022, Hernandez submitted two grievances. The first stated that: "Due to bullet lodged in my skin I received an abscess on my thigh. I notified the CCHS nurses staff. I guess they didn't believe me I was in pain for 7 days. Until I was sent to Stroger Abscess bursted due to the neglect of the Div. 8 staff. I was in extreme pain and no one did anything for me." [71] ¶ 28. The second grievance said: "I had dr. appt @ Mt. Sinai Hospital on October 19, 2022 at 1:45am. They canceled appt. for another month to help with colostomy bag. I did not have my colostomy bag for seven days because none were available. I had to reuse unsanitary one by cleaning

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings. When citing depositions, I also use the deposition transcript's original page numbers. The facts are largely taken from the parties' responses to their adversary's Local Rule 56.1 statement of facts, [71] and [74], where both the asserted fact and the opposing party's response are set forth in one document. Asserted facts need to be supported by reference to specific pages in the evidentiary record. N.D. Ill. Local R. 56.1(d)(1)–(2). Any asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). I disregard legal arguments in the statement of facts. *See Cady v. Sheahan*, 467 F.3d 1057, 1060–61 (7th Cir. 2006). The parties dispute many facts, but the facts in those disputes are not all material. To the extent disputed facts are relevant and the parties rely on admissible evidence, I include both sides' versions.

it every time I had a bowel movement. This is cruel and unusual punishment and a violation of my constitutional right." [71] ¶ 32. Neither grievance named a particular nurse. [71] ¶¶ 29, 33; [68-3] at 3.²

The next month, Hernandez submitted a third grievance: "Due to neglect of the CCHS staff in div 8 I have been experiencing several problems with my colostomy bag. Now my guts are pushing out more because they have assessed I currently have a hernia. I am in constant pain I tried to express to people (CCHS) nurses something was wrong but they just ignore me. This is cruel and unusual punishment, violates my constitutional rights and is not right at all. Can I please have this situation rectified as soon as possible. I'm pleading to whomever can assist me." [71] ¶ 36. He did not name any nurse in the grievance. [71] ¶ 37; [68-3] at 7.

Two months later, Hernandez filed another grievance that said: "I tried to make medical staff aware that I have another abscese [sic] in my groing [sic] area that is infected. It hurts really badly. I also have fluids draining from the tube along right butt check. My hernia is still not fixed hurting with blisters and uncomfortable. This is cruel and unusual punishment and I don't feel Health Care is following the proper procedures to advocate for me. I feel C.C.H.S. has been negligent concerning

---

² Hernandez disputes that he did not identify anyone in the accused section of the second October grievance or the November 2022 grievance, but while his description of the issue does accuse the "CCHS nurses staff," the "Div. 8 staff," the "CCHS Staff in Div. 8," and "people (CCHS) nurses" of wrongdoing, those titles are not in the box on the grievance form labeled "accused."

my medical needs." [74] ¶ 1. In that grievance, he named "C.C.H.S. Medical Staff"

and "P.A. Kaczrowki"[3] as the accused. [74] ¶¶ 1, 5; [68-3] at 9.

Hernandez filed a final medical grievance four months after the last that

stated: "I have been in CCDOC custody since September 4, 2022. I have had multiple

infections in my leg and right-side buttocks since this date. The care I am receiving

is subpar. I have had to suffer from extreme pain daily. I have brought this issue to

the attention of medical staff. But have not gotten proper medical attention. On April

25, 2023, I noticed on the right side of my buttock. I put in a medical request on the

27th and 28th of April A [sic] the 2st [sic] May. By this time the infection on my

buttock had ruptured. On the 29th of April I was called in for wound care. I was given

supplies to treat my own wounds. Since this time my infections have gotten worse in

both buttocks and left leg." [71] ¶ 40. Hernandez named Nurse James as the accused

in this grievance form. [71] ¶ 43; [74] ¶ 4.

## III.   Analysis

### A.   Failure to Exhaust

Defendants argue that Hernandez failed to exhaust all administrative

remedies for two reasons: (1) Hernandez failed to place the defendants on notice of a

potential issue because he did not identify the specific nurses or Cook County in any

grievance and did not describe the misconduct by Nurse James and (2) the grievances

were substantively different from his second amended complaint as it relates to

claims against defendant Cook County.

---

[3] P.A. Kaczrowski is not a party to this suit.

       *1.     Notice*

The Prison Litigation Reform Act requires individuals in custody challenging jail or prison conditions to exhaust all administrative remedies before they can file suit in federal court. *Jackson v. Esser*, 105 F.4th 948, 956 (7th Cir. 2024); 42 U.S.C. § 1997e(a). This requirement ensures that "'a prison has received notice of, and an opportunity to correct, a problem' before being drawn into litigation." *Jackson*, 105 F.4th at 958–59 (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)). If a grievant takes all administrative steps, all that is required for exhaustion under the PLRA is that the grievance "provides notice to the prison of the 'nature of the wrong for which redress is sought.'" *Id.* at 959 (quoting *Shillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020)). Exhaustion is an affirmative defense, with the burden of proof on the defendants. *Perttu v. Richards*, 605 U.S. 460, 469 (2025); *Turley*, 729 F.3d at 650. If there is a factual dispute regarding the merits of a legal claim that is intertwined with the affirmative defense of exhaustion, the dispute must go to a jury. *Perttu*, 605 U.S. at 468.

Defendants first claim they were not on notice because Hernandez did not identify the specific nurses or Cook County in any of his grievances. But the PLRA does not require a plaintiff to name defendants in a grievance, only that the grievant provide "some identifying information about the accused individuals." *Jackson*, 105 F.4th at 959–60 (quoting *King v. Dart*, 63 F.4th 602, 609 (7th Cir. 2023)); *see also* 20 Ill. Admin. Code § 504.810 (not requiring names, but that the accused provide "as much descriptive information about the individual as possible."). A claim is exhausted "as to defendants not named in a grievance when, from the content of the grievance

and the nature of the complained of conduct the prison was clearly on notice that those unnamed defendants were involved." *Jackson*, 105 F.4th at 960.

Hernandez filed a series of grievances against "CCHS Nurses staff" and "the Div. 8 staff," [68-3] at 3; "the CCHS staff in Div. 8" and the "(CCHS) nurses," [68-3] at 7; "the C.C.H.S. Medical Staff," [68-3] at 9; and "C.C.H.S." [74] ¶ 5. This sufficiently informed the Cook County Department of Corrections that Hernandez was grieving against medical staff, and in particular, the nurses and staff of Division 8. Defendants say that absent identifying information, neither the Cook County Department of Corrections nor the defendants were placed on notice of misconduct. But Hernandez's grievances repeatedly stated that he was in pain and had wounds and infections, he attempted to notify medical staff and was either ignored or made to provide medical care to himself. Together with the description of the specific medical issues he was experiencing and his complaints about lack of care for those issues, Hernandez's description of medical staff, and in particular, nurses in a specific division of the jail during medical encounters, was sufficient to place the Cook County Department of Corrections on notice of the nature of the wrong—lack of medical care—and that the unnamed nurses and the county itself were involved. *Jackson*, 105 F.4th at 960.

Defendants say that the failure to identify defendants would "create an administrative nightmare" to track down each person involved in the grievance, and that a significant number of doctors, nurses, and medical staff are employed at the Cook County Department of Corrections. But that administrative nightmare is likely in any grievance where a grievant cannot name the accused—and names are not

6

required by the Illinois regulations. If Illinois policymakers wish to tighten the requirements to require names in grievances, they may do so, but a court may not. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("If Illinois wants grievances to be more detailed, it must adopt appropriate regulations and inform prisoners what is required of them.").

Moreover, the failure to name a particular defendant in a grievance is a "mere technical defect" that has "no effect on the process and [does not] limit the usefulness of the exhaustion requirement." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011); *Jones v. Bock*, 549 U.S. 199, 219 (2007) (noting that providing early notice to those who may later be sued "has not been thought to be one of the leading purposes of the exhaustion requirement"). Where a prison is aware of the content of the grievant's complaint and addresses it on the merits, defendants cannot rely on the failure to exhaust defense. *King*, 63 F.4th at 609; *Maddox*, 655 F.3d at 722 ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense.").

Even if the lack of names or more personal descriptions was a procedural defect, each of Hernandez's grievances was addressed on the merits. Shebel, who addressed each grievance, responded with details about the medical encounters and follow-up. *See* [68-3] at 4 ("Received antibiotics x7 day, abscess drained spontaneously."); [68-3] at 6 ("Some supplies were not available due to supply chain

7

issues. Alternatives provided."); [68-3] at 8 ("You have had many medical visits since this date and your medical needs are being addressed."); [68-3] at 10 ("You were on antibiotics at this time and you are receiving ongoing care. Pain management in place."). That the grievances were addressed on the merits and the responses contained additional details belies the contention that the department was not on notice of the nature of the wrongs alleged. The department was able to "properly investigate and resolve grievances" with the information that Hernandez provided—the very purpose of the PLRA. *Jackson*, 105 F.4th at 960. Because the department of corrections addressed the claims on the merits, and the lack of named accused did not affect the grievance process, defendants cannot now rely on the exhaustion defense.

Finally, defendants claim that the May 2023 grievance against James did not have any reference to misconduct by James. But the grievance named James in the "accused" section, and described the issue: Hernandez had multiple infections, was in "extreme pain," brought the issue to the attention of medical staff, and did not receive proper medical attention. He requested medical care, and when he was called in, he was given supplies to treat his own wounds instead of receiving care from the nurses. This was more than enough detail to provide the department with notice of the wrong that Hernandez was alleging.

Because the grievances provided sufficient identifying details, any lack of names was a technical defect, and the department was able to address the complaints

fully on the merits. There is no genuine dispute of material fact. Hernandez exhausted his administrative remedies.

### 2. *Differences between grievances and complaint*

The defendants also argue that the grievances differed substantively from his complaint because they did not contain any allegations of any widespread practice or policies regarding individuals in custody pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). A claim is not exhausted where the complaint's allegations are substantively distinct from the allegations in the grievance. *See King*, 63 F.4th at 608. But courts in this district have found that there is no obligation to explicitly raise a policy or practice in a grievance to exhaust a *Monell* claim. *See Clark v. Cook Cnty. Sheriff's Off.*, 2024 WL 148242, at *2–3 (N.D. Ill. Jan. 12, 2024); *Loving v. Gomez*, 2022 WL 3026932, at *4 (N.D. Ill. Aug. 1, 2022); *Daval v. Zahtz*, 2021 WL 2072127, at *8 (N.D. Ill. May 24, 2021); *Nicholl v. Wexford Health Care Sources, Inc.*, 2019 WL 4894566, at *2 (N.D. Ill. Oct. 4, 2019). I find these cases persuasive. First, nothing in the Illinois Department of Corrections regulations required an incarcerated person meet the *Monell* standard to ring the alarm about a problem caused by an institutional policy or custom. *See* 20 Ill. Admin. Code § 504.800 *et seq.*; *Riccardo*, 375 F.3d at 524 ("When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming."). Nothing in the grievance process required individuals in custody to list specific widespread practices or customs on the

9

grievance forms. If Illinois policymakers wish to require this for exhaustion, they can do so. *Riccardo*, 375 F.3d at 524.

As the court in *Daval* noted, it would be "unreasonable for an inmate to know—and then basically plead—a policy, custom, or practice" by the defendant. *Daval*, 2021 WL 2072127, at *8; *see also Clark*, 2024 WL 148242, at *2 (quoting *Cohn v. Wexford Health Sources, Inc.*, 2022 WL 2802304, at *4 (S.D. Ill. July 18, 2022)) ("Requiring inmates with no formal legal education to articulate the subtleties of a *Monell* claim or a third-party beneficiary action on a grievance form is asking a lot."). The grievance process only required Hernandez to provide department officials a "fair opportunity" to address his complaints. *Maddox*, 655 F.3d at 713.

Hernandez's grievances put the department on notice that he was not receiving adequate medical care. It would not be reasonable to expect Hernandez to plead information about the department's medical policies to alert the department that he was not getting medical care and correct that action. *See* Clark, 2024 WL 148242, at *3. Hernandez would not necessarily have access to information about the department's policies on providing care to individual patients or its practice of treating other patients. *Id.* "As such, the Court will not hold [Hernandez] to a standard requiring him to plead information he would not reasonably know." *Id.* Hernandez did not fail to exhaust his administrative remedies on his *Monell* claim. Defendants' motion for summary judgment is denied.

### B. Respondeat Superior

In their opening brief, defendants argue that Hernandez, in Count II, seeks to bring a state law *respondeat superior* claim against Cook County. Hernandez

counters that the argument is improper and untimely, and that, even if it weren't,
Count II is properly pled under the Fourteenth Amendment and 42 U.S.C. § 1983.

The motion for summary judgment was limited to the defense of failure to
exhaust administrative remedies. *See* [62], [63], [66]. Because the county's argument
about Count II raises an issue outside the scope of failure to exhaust, it is not properly
before me. However, to the extent that Count II alleges wrongdoing by Cook County,
the county can only be liable if the county itself violated Hernandez's rights or was
the "moving force" for the violation. *Nelson v. City of Chicago*, 992 F.3d 599, 606 (7th
Cir. 2021).

## IV.    Conclusion

Defendants' motion for summary judgment, [67], is denied. The parties shall
resume discovery on the merits. All remaining fact discovery must be noticed in time
for completion by December 4, 2025, and the parties shall file a status report
proposing a schedule for expert discovery by November 13, 2025.


ENTER:

_____
Manish S. Shah
United States District Judge

Date: August 15, 2025

11